IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE and | § | |
| PRISON JUSTICE LEAGUE, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-14-2985 |
| | § | |
| TRACY BAILEY, BRAD LIVINGSTON, | § | |
| JUAQUINE POPE, MICHAEL LEWIS, | § | |
| DIVEONLEA LOTT, MICHAEL KIRK, | § | |
| KENNETH CATHEY, KEVIN LLOYD, | § | |
| and TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a prisoner civil rights case. Plaintiff John Doe
("Doe") is an inmate incarcerated by the Texas Department of
Criminal Justice – Correctional Institutions Division ("TDCJ").[1]
Plaintiff Prison Justice League ("PJL") alleges that it is a
"membership-based, non-profit organization" with a mission "to
improve conditions of incarceration through 'litigation, advocacy,
and empowering [its] members.'"[2] Doe and PJL (collectively,
"Plaintiffs") allege violations of the First, Eighth, and
Fourteenth Amendments under 42 U.S.C. § 1983 against prison
officers and supervisory officials, and violations of the Americans
with Disabilities Act, 42 U.S.C. §§ 12131 et seq. ("ADA"), and
section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794

---

[1] See Docket Entry No. 8, Amended Complaint ("Am. Complt.") at ¶ 57.

[2] Id. at ¶ 9.

("Rehabilitation Act") against TDCJ directly.[3]   Warden Tracy Bailey ("Bailey") has filed a motion to dismiss the claims against her pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Docket Entry No. 10).   Plaintiffs have filed a response (Docket Entry No. 13).   After reviewing the pleadings, the motion, the response, and the applicable law, the Court concludes as follows.

## I.  Background

Doe's complaint stems from an alleged use of force that occurred at the Estelle Unit, where the defendant guards and Warden Bailey are employed and where Doe was confined at the time of the alleged incident directly involving Doe.[4]   Doe alleges that on January 25, 2014, he complained in writing to medical staffers that he had lost 20 pounds since his placement on the high security wing.[5]   A few days later, officers allegedly confiscated all his belongings, including his clothes, mattress, and blankets, and left him naked in a cold cell for three days without food.[6]

On January 30, Doe allegedly tried to get a supervisor's attention to his plight by putting his arms in his food slot so

---

[3] Id. at ¶¶ 58-68.

[4] Id. at ¶¶ 10, 12, 45, 57.

[5] Id. at ¶ 46.

[6] Id.

2

that it could not be closed.[7]  Instead of eliciting help, this action drew the attention of then-Lieutenant Juaquine Pope ("Pope"), who allegedly emptied 14 ounces of pepper spray into Doe's cell.[8]  Pope then allegedly demanded that Doe, already naked, submit to a strip search in order "to create an ostensible justification for sending a 'five-man team' into his cell."[9]  Doe claims that this five-man team, allegedly consisting of Defendants Michael Lewis, Diveonlea Lott, Michael Kirk, Kenneth Cathey, and Kevin Lloyd, overpowered Doe, who was already incapacitated by the pepper spray.[10]  They allegedly knocked him to the ground and struck him above the eye, causing a significant laceration.[11]  Doe alleges that one officer then reached between his legs and violently twisted his genitals and briefly shoved an unknown object into his rectum while he screamed.[12]  The guards then allegedly brought him out of his cell in leg irons and handcuffs, and a medical staffer determined that he should be seen in the medical area.[13]  The guards allegedly wrapped a towel around Doe to conceal his nudity and escorted him to the infirmary where medical staff applied a

---

[7] Id. at ¶ 47.  This action is known as "jacking the food slot." Id.

[8] Id. at ¶ 48.  Pope allegedly was later promoted to Captain. Id.

[9] Id. at ¶¶ 49-50.

[10] Id. at ¶¶ 12, 50-51.

[11] Id. at ¶ 51.

[12] Id. at ¶ 52.

[13] Id. at ¶ 53.

3

dermabond bandage to the laceration above his eye and scheduled him for an x-ray.[14]   Doe alleges that TDCJ staff later refused to take him to the appointments and falsely represented that he was "refusing" treatment.[15]   Doe alleges that his wound continued to bleed for several days.[16]

Doe alleges that the guards returned Doe to his pepper-spray-laden cell without cleaning it, allegedly contrary to TDCJ policy and in violation of the ADA.[17]   Doe alleges that he suffers from Chronic Obstructive Pulmonary Disease ("COPD") and that the copious amounts of pepper spray used, along with the failure to clean his cell, severely aggravated his condition.[18]

Regarding PJL, it claims that it has standing to sue for injunctive relief on behalf of its members who are confined at Estelle Unit.[19]   Plaintiffs do not allege that Doe is a member of PJL in their amended complaint, although PJL points to Doe as an example of the alleged "ongoing," "rife" violence and excessive force at the Estelle Unit.[20]   Plaintiffs do not allege that Bailey saw what happened to Doe in particular, directed the action, or

---

[14] Id. at ¶¶ 53-54.

[15] Id. at ¶ 54.

[16] Id.

[17] Id. at ¶ 55.

[18] Id. at ¶ 56.

[19] Id. at ¶ 9.

[20] Id. at ¶¶ 1, 5.

actively participated in the incident involving Doe.

Plaintiffs generally allege that officers at the Estelle Unit "routinely exercise unbridled discretion to use physical force on inmates that is unnecessary to maintain discipline on the unit — striking them, twisting arms, slamming them into walls, or throwing them to the ground."[21]  Citing comments made by District Judge William Wayne Justice in connection with the Ruiz class action lawsuit, Plaintiffs contend that supervisory officials in TDCJ have "abdicated" their responsibility to oversee the use of force in the past and that "nothing has changed."[22]  Plaintiffs also allege that members of PJL have been abused by guards in the past.[23]  Plaintiffs contend that Bailey routinely reviews grievances filed by inmates and was thus "on notice" of "excessive force and systemic retaliation" at the Estelle Unit, "but she has not tried to fix it."[24]  Plaintiffs also believe that Bailey has seen incidents involving the excessive use of force at the Estelle Unit and is aware of officers forming five-man extraction teams and using excessive amounts of pepper spray.[25]  Plaintiffs contend that "Bailey had received many complaints about Joaquin Pope and one or

---

[21] Id. at ¶ 17.

[22] Id. at ¶ 18 (citing and quoting from Ruiz v. Johnson, 37 F. Supp. 2d 855, 929 (S. D. Tex. 1999), rev'd sub nom. Ruiz v. United States, 243 F.3d 941 (5th Cir. 2001)).

[23] Id. at ¶¶ 20-24.

[24] Id. at ¶ 35.

[25] Id. at ¶¶ 40-41.

more of the other officers who assault[ed] John Doe regarding excessive force" but took no action to punish or restrain them.[26] Because she was "fully aware [that] excessive force is common in the [Estelle] unit," as well as retaliation, Plaintiffs claim that Bailey is liable as a supervisory official for failing to protect Doe and PJL members from harm and that her acquiescence permitted ongoing retaliation against them.[27]

Doe seeks damages from Bailey for failing to protect him from officers known to be dangerous and an injunction preventing TDCJ from returning him to Estelle and an injunction preventing Defendants from retaliating against him for filing suit.[28] He also seeks injunctive relief and damages against TDCJ directly for alleged violations of the ADA. PJL seeks declaratory judgment that Estelle Unit officers generally are violating their First, Eighth, and Fourteenth Amendment rights and that TDCJ's use of pepper spray violates the ADA and Rehabilitation Act.[29]

Bailey now moves to dismiss PJL as a party for lack of standing and to dismiss Doe's claims against her in her official and individual capacities for failure to state a claim for which

---

[26] Id. at ¶ 42.

[27] Id. at ¶¶ 60, 63.

[28] Id. at ¶¶ 70, 73.

[29] PJL does not seek specific injunctive relief, but only a general declaration that the Estelle Unit is violating the Eighth, First, and Fourteenth Amendments with respect to excessive force and retaliation and violating the ADA with regard to its use of pepper spray. See Am. Complt. at ¶ 72.

relief may be granted.[30]

## II.  Rule 12(b)(1) Motion to Dismiss

### A.  Standard of Review

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" <u>Halmekangas v. State Farm Fire and Cas. Co.</u>, 603 F.3d 290, 292 (5th Cir. 2010) (citations omitted).  As such, the existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised by the district court on its own motion. *See* <u>Nguyen v. Dist. Director, Bureau of Immigration and Customs Enforcement</u>, 400 F.3d 255, 260 (5th Cir. 2005) (citations omitted).

Under Rule 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *See* <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed along with other Rule 12 motions, the court should first consider the Rule 12(b)(1) motion. <u>Id</u>.

### B.  Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." <u>Susan B. Anthony List v. Driehaus</u>, 134 S. Ct. 2334, 2341 (2014)

---

[30] Docket Entry No. 10.

(quoting U.S. CONST., Art. III, § 2). To show standing, a plaintiff must plead facts to indicate (1) an injury-in-fact that is concrete and particularized and actual or imminent; (2) a sufficient causal connection between the injury and the alleged harm; and (3) the injury is likely to be redressed by a favorable decision. Id.

The United States Supreme Court has recognized that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and © neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Adver. Comm'n, 97 S. Ct. 2434, 2441 (1977) (emphasis added); see also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 191 (5th Cir. 2012); Ass'n of Am. Physicians and Surgeons v. Tex. Med. Bd., 627 F.3d 547, 550 (5th Cir. 2010). The party invoking federal jurisdiction bears the ultimate burden to establish standing with the "manner and degree of evidence required at the successive stages of the litigation." Lugan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992).

At the pleading stage of this litigation, PJL has pled facts facially to support the first two prongs of associational standing with respect to PJL's requests for injunctive and declaratory relief.    PJL alleges that it brings this action through

"organizational standing, relying on the standing of its members."[31]
PJL further alleges that it is "a membership-based, incorporated
non-profit organization" which has a mission "to improve conditions
of incarceration through 'litigation, advocacy, and empowering
[its] members.'"[32]   It contends that over 100 of its members are
confined at the Estelle Unit.[33]   PJL alleges facts to indicate that
it seeks relief on behalf of its members and that the relief it
seeks is germane to PJL's mission.

     To determine whether an association meets the third prong —
that the participation of individual members is not required for
the proper adjudication of the case — the Court examines both the
relief requested and the claims asserted. *See* Harris v. McRae, 100
S. Ct. 2671, 2690 (1980); Friends for Am. Free Enter. Ass'n v. Wal-
Mart Stores, 284 F.3d 575, 577-78 (5th Cir. 2002).   In the Fifth
Circuit, the key inquiry regarding whether the claims require the
participation of the individual members centers on whether the
adjudication of the claim can be proven by evidence from
representative injured members, or whether the claim requires a
"fact-intensive-individual inquiry." Ass'n of Am. Physicians and
Surgeons, 627 F.3d at 552.

     PJL claims that the guards at Estelle use excessive force and

---

[31] Am. Compl. at ¶ 9.

[32] Id.

[33] Id.

retaliate against its members in violation of its members' Eighth, First, and Fourteenth Amendment rights, and seeks a declaration from this Court that the Estelle Unit is violating those rights. As discussed below, excessive force, retaliation, and whether the use of pepper spray is appropriate in a situation are highly fact-intensive inquiries requiring the participation of any individual making such claims.

PJL relies on <u>Association of American Physicians and Surgeons</u> to argue that it has standing to sue on its members' behalf, claiming that it has alleged "similar facts" to that case.[34] Although both cases involve some assertion of First Amendment retaliation, the similarities end there. The members of PJL are not physicians seeking redress from an allegedly defamatory and capricious medical board; these are prison inmates who individually and under all sorts of varied circumstances are subject to discipline and the use of force to maintain order and security in a prison. Sorting out whether the discipline and force used passes constitutional muster requires a case-by-case, fact-intensive review of the individual circumstances surrounding each incident in question, inquiring whether the force was applied in a "good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 112 S. Ct. 995, 999 (1992).

---

[34] Docket Entry No. 13 at 5.

### 1.   **Excessive Force**

Excessive force in the prison context requires the evaluation of the nature and amount of force used, the extent of the injury suffered, and whether the force was used to keep order or for a malicious purpose, among other things. *See* Wilkins v. Gaddy, 130 S. Ct. 1175, 1177-79 (2010) (rejecting the notion that significant physical injury is a necessary element of an Eighth Amendment excessive force claim but noting that the extent of the injury suffered is "one factor" suggesting whether the use of force could plausibly have been thought necessary in a particular situation). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (discussing Fourth Amendment excessive force claims); *see also* Carter v. Wilkinson, Civ. A. No. 1:06-cv-02150, 2010 WL 5125499, at *2 (W.D. La. Dec. 9, 2010) (quoting Deville and discussing Eighth Amendment excessive force claims).  Because excessive force claims require individualized, fact-based details of particular situations, participation of the individual members who were allegedly subjected to the harm is necessary for the proper adjudication of each claim.

Moreover, the participation of each allegedly harmed member would be crucial to determining the viability of affirmative defenses such as exhaustion of remedies and to fashioning the scope

of injunctive relief appropriate to each case.   *See* <u>Wal-Mart Stores</u>, 284 F.3d at 577-78 (finding that the scope of injunctive relief that was appropriate, and the available affirmative defenses, were different for each plaintiff, requiring participation of the individual members).   For example, Doe seeks an injunction against ever being placed back at Estelle.[35]   For another inmate, moving to another wing might be sufficient, if he were to prevail in his case with adequate proof. Proper injunctive relief in another case could involve an injunction against a particular guard, and so on.   In the context of fact-intensive cases like this one, injunctive relief still requires individual participation; PJL cannot claim automatic associational standing solely because it seeks only injunctive or declaratory relief.   *See* <u>Wal-Mart Stores</u>, 284 F.3d at 577-78.

Although PJL alleges a few incidents with anonymous inmates and unnamed guards on unspecified dates, each of those claims must be examined individually, and the proper plaintiffs to prosecute those claims are the individuals who were allegedly subjected to the excessive force and retaliation. *See, e.g.,* <u>Amnesty America v. County of Allegheny</u>, 822 F. Supp. 297, 301 (W.D. Pa. 1993) (finding that "serious allegations of excessive force and sexual assault require the participation of individual 'members' in this action"

---

[35] *See* Am. Complt. at ¶ 73.

12

and rejecting Amnesty's associational standing arguments).[36]

### 2.    Retaliation

To state a claim for retaliation in the prison context, an inmate must allege the violation of a specific constitutional right and be prepared to establish that, but for the retaliatory motive, the complained-of incident would not have occurred.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  Here, PJL generally alleges that its unnamed members file unidentified grievances and are then at some unspecified time subjected to discipline.  Again, whether a prisoner has been retaliated against for filing a grievance requires individualized assessments of causation, chronology of events from which a retaliatory motive could plausibly be inferred, and a more-than-de-minimus retaliatory adverse act.  See, e.g., Richard v. Martin, 390 F. App'x 323, 325-26 (5th Cir. 2010) (looking to all of the particular allegations made by an inmate and determining that he had stated a claim for retaliation based on specific facts to establish plausible causation and adverse retaliatory action in his case).

The need for close scrutiny of individual retaliation claims is especially keen in the prison context.  The Fifth Circuit has admonished district courts: "To assure that prisoners do not

---

[36] At least one of the alleged incidents of excessive force pled by PJL bears a striking similarity to a separate case brought by an individual inmate at the Estelle Unit, who is represented by the same lawyer who represents Plaintiffs here.  Cf. Am. Complt. at ¶ 21 (fourth example) with Hastings v. Williams, Civil Action H-15-0239, at Docket Entry No. 1, at ¶¶ 10-15 (Atlas, J. presiding).

inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." <u>Woods</u>, 60 F.3d at 1166.  Thus, PJL's putative retaliation claims, wherein it seeks a general declaration covering the whole Estelle Unit rather than a remedy for a specific incident or applied against a specific guard, is inappropriate for adjudication through associational standing. Notions of fairness and the right to defend oneself against accusations require the participation of each individual allegedly harmed and the opportunity of defendants against whom such wrongs are alleged to raise a defense, including any affirmative defenses, in each individual case.

### 3.   Pepper Spray

Likewise, PJL's general request for a declaration that "TDCJ's custom and practice with using pepper spray violates inmates' rights under the ADA and Section 504"[37] requires individual participation of members and a case-by-case evaluation rather than a blanket declaration against TDCJ.   Prison officials may reasonably use pepper spray or similar chemical agents to maintain or restore order, and whether the use was reasonable depends on the facts and circumstances of each individual case. *See, e.g.*, <u>Scott v. Hanson</u>, 330 F. App'x 490, 491 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 638 (2009); <u>Thomas v. Comstock</u>, 222 F. App'x 439, 442 (5th

---

[37] Am. Complt. at ¶ 72.

Cir. 2007) (citations omitted) (noting several facts in the situation to support the finding that officer used spray reasonably, including that the officer warned the inmate, had ensured that inmate had no health problems that would be aggravated by the spray, and immediately allowed inmate to go to the infirmary). Whether the use of pepper spray is appropriate depends upon the circumstances of each case and the particular sensitivities of each potential plaintiff. Such a claim necessarily requires the participation of each member inmate who claims to have been harmed.

PJL seeks "a declaratory judgment that Estelle Unit officers are violating their First, Eighth, and Fourteenth Amendment rights, and that TDCJ's custom and practice with using pepper spray violates inmates' rights under the ADA," and hence, it prays for "appropriate injunctive relief."[38]  Because these claims of PJL alleging excessive force, retaliation, and practices of using pepper spray require, as observed above, individualized assessments and fact-intensive inquiries into each member's claims, the participation of each member is necessary for the proper adjudication of this case.  Concomitantly, PJL lacks standing to bring suit based on such fact-intensive individualized claims of

---

[38] Am. Complt. at ¶¶ 72, 74(C).

its members, and PJL will therefore be dismissed from this suit.[39]

## C.   Official Capacity Claims against Bailey

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend XI.   Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See* Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1122 (1996); *see also* Pennhurst State Sch. & Hosp. v. Halderman, 104 S. Ct. 900, 908 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court). Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency.  *See* Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567, 574 (5th Cir. 2002).

As a state agency, TDCJ is immune from a suit for money damages under the Eleventh Amendment unless it is waived or

---

[39] Because PJL's associational standing arguments fail on the third prong of the analysis, it is not necessary for the Court to decide, in this case, whether and how Bailey's allegations of unethical behavior in PJL's formation and Texas Civil Rights Project's advocacy might disqualify PJL, or whether PJL possesses the requisite characteristics to qualify as an "association" within the meaning of Hunt and its progeny. *See* Hunt, 97 S. Ct. at 2442 (finding that the state agency, although not a formal "association," was an association for purposes of associational standing because it bore the "indicia of membership" of voting in, financing, and serving on the board of the agency).

16

abrogated by Congress. *See* <u>Talib v. Gilley</u>, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. *See* <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2001); <u>Aguilar v. Texas Dep't of Criminal Justice</u>, 160 F.3d 1052, 1054 (5th Cir. 1998). To the extent that Doe seeks monetary damages against Bailey in this case, the Eleventh Amendment bars his claims against Bailey in her official capacity as a state employee.

Nonetheless, Doe contends that official immunity does not apply to claims seeking prospective injunctive relief. It is true that an exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See* <u>Aguilar</u>, 160 F.3d at 1054 (citing <u>Ex parte Young</u>, 28 S. Ct. 441 (1980)). As discussed at length above, PJL lacks standing in this case, and therefore its claims for injunctive relief are jurisdictionally barred. A review of the pleadings and Plaintiffs' response indicates that Doe seeks injunctive relief in this lawsuit in the form of an injunction preventing TDCJ from returning him to the Estelle Unit and from retaliation for filing suit. This request does not name Bailey as the person with the authority to assign or transfer prisoners. Bailey represents in her motion that she does

17

not have the authority to transfer prisoners in or out of Estelle, and Doe does not controvert this in his response nor does he argue for injunctive relief against Bailey separate from the injunction he seeks against TDCJ.  Accordingly, the official capacity claims against Bailey are dismissed.

### III.   Individual Capacity Claims against Bailey

Bailey also moves to dismiss the claims against her in her individual or personal capacity under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[40]  In particular, Bailey argues that Doe has failed to state a claim against her in her individual capacity and that she is entitled to qualified immunity from suit because Doe has not alleged facts establishing that she had any personal involvement in the assault which forms the basis of his complaint and he does not otherwise establish that she is liable as a supervisory official.

### A.   Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or

---

[40] Doe's claims against Warden Bailey are quite similar in their premise and at times identical in their wording to the claims made by the plaintiff in Hastings v. Williams, Civ. A. No. 4:15-cv-00239, at Docket Entry No. 1 (S.D. Tex., Jan. 27, 2015) (Atlas, J.).  Both complaints are signed by the same attorney.  The legal reasoning and analysis by the Honorable Nancy Atlas, who dismissed plaintiff Hastings's complaint against Bailey, are equally applicable here and require the like dismissal of Doe's action against Bailey for failure to state a claim.  See id. at Docket Entry No. 11.

admission, its task is inevitably a limited one. Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court construes the allegations in the complaint favorably to the pleader and accepts as true all well-pled facts in the complaint. La Porte Construction Co. v. Bayshore Nat'l Bank of La Porte, Tex., 805 F.2d 1254, 1255 (5th Cir. 1986). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Pleadings that are no more than conclusions "are not entitled to the assumption of truth." Id. at 1950. While a complaint "does not need detailed factual allegations ... [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations and internal footnote omitted).

**B.    Qualified Immunity**

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See* <u>Harlow</u>, 102 S. Ct. at 2738.   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 106 S. Ct. 1092, 1096 (1986).   As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011).    Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Id</u>. at 2080 (citation omitted).

**C.    Supervisory Liability**

Personal involvement is an essential element of a civil rights cause of action in an individual capacity claim. *See* <u>Murphy v. Kellar</u>, 950 F.2d 290, 292 (5th Cir. 1992) (plaintiff bringing a section 1983 action must "specify the personal involvement of each defendant").    In that respect, section 1983 does not create vicarious or *respondeat superior* liability for the wrongdoing of others. *See* <u>Monell v. Dep't of Social Servs.</u>, 98 S. Ct. 2018, 2036-38 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions under

20

section 1983); *see also* Iqbal, 129 S. Ct. at 1949 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (citation omitted); Alton v. Texas A&M Univ., 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."). Because vicarious liability is inapplicable in a section 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948.

In this circuit, supervisory officials can be held liable only if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See* Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also* Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Thompkins, 828 F.2d at 304 (quotations omitted); *see also* Porter v. Epps, 659 F.3d 440, 446 (5th Cir.

2011) ("A supervisory official may be held liable [under § 1983] . . . if . . . he implements unconstitutional policies that causally result in the constitutional injury").

Doe does not allege that Bailey had any personal involvement in the use of force that forms the basis of his complaint. Likewise, Doe does not allege facts showing that Bailey implemented an unconstitutional policy that resulted in a constitutional violation.   Instead, Doe's primary allegation is that Bailey is liable in her individual capacity as a supervisor because she was aware that there is an "atmosphere" of excessive force at the Estelle Unit, and she acquiesced to or permitted the use of force to occur.[41]  This allegation fails to state a claim for two reasons.

First, Doe alleges no more than knowledge or acquiescence in general misconduct by subordinates.    Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983.  See Iqbal, 129 S. Ct. at 1949 (rejecting an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct).   There must be an affirmative link between the injury and the defendant's conduct.  See Thompkins, 828 F.2d at 304;  see also Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 423 U.S. 362, 371-72 (1976)). Absent facts establishing the defendant's personal involvement or implementation of a constitutionally defective policy that pertains

---

[41] Am. Complt. at ¶¶ 39-43.

to the specific incident that forms the basis of the complaint, Doe's claim against Bailey rests on a theory of vicarious liability or *respondeat superior*, which is not a basis for recovery under section 1983.

Second, Doe does not allege facts in support of his assertion that Bailey was specifically aware that Pope or any of the other guards involved in the incident with Doe posed a substantial risk of serious harm to others. Although Doe makes general reference to previous grievances against Pope and other guards, he does not describe their content or indicate when they were filed. Other allegations by Doe, such as those concerning the Ruiz litigation, are remote in time and do not clearly involve actions taken by Bailey. Doe does not otherwise allege facts in support of his assertion that Pope and other officers have engaged in a pattern of misconduct similar to the assault that forms the basis of the complaint or that they have used violence "routinely" while Bailey has occupied a supervisory role at the Estelle Unit. As such, Doe's bare assertion that Bailey knew that Pope or one of the other guards involved in the alleged incident posed a danger or that she was fully aware of "rife" violence at the Estelle Unit are not entitled to be assumed true. *See* Iqbal, 129 S. Ct. at 1950. Under these circumstances, Doe does not plead facts to establish that Bailey had notice that Pope posed a substantial risk of serious harm to Doe or that she was deliberately indifferent to such a risk for purposes an Eighth, First, or Fourteenth Amendment violation.

23

*See* <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Thus, Bailey is entitled to qualified immunity from suit. *See* <u>Walker v. Livingston</u>, 381 F. App'x 477, 480 (5th Cir. 2010) (concluding in a failure-to-protect case that supervisory officials were entitled to qualified immunity absent facts showing a likelihood of actual subjective awareness of the specific risk to the prisoner).

Doe cites <u>Williams v. Hampton</u>, 562 F. App'x 192, 197 (5th Cir. 2014), to support his claim against Bailey, but the Fifth Circuit recently superseded its opinion in <u>Williams</u>, reversing its decision on rehearing en banc. *See* <u>Williams v. Hampton</u>, 797 F.3d 276 (5th Cir. July 28, 2015) (en banc) (holding that the prison guard's actions or omissions did not, as a matter of law, rise to the level of deliberate indifference). On rehearing en banc, the Fifth Circuit reiterated that to "violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind . . . . that state of mind is one of 'deliberate indifference' to inmate health or safety.'" <u>Id</u>. at 280 (citing <u>Farmer</u>, 114 S. Ct. at 1977). Deliberate indifference is an "'extremely high standard to meet'" because it "requires a showing that the prison official 'knows of and disregards' the substantial risk of serious harm facing the inmate." <u>Morgan v. Hubert</u>, 459 F. App'x 321, 326 (5th Cir. 2012) (quoting <u>Farmer</u>, 114 S. Ct. at 1979).

Doe has failed to articulate facts demonstrating the requisite personal involvement or deliberate indifference on Bailey's part

and has failed to state a claim upon which relief may be granted against her in her individual capacity. Accordingly, Bailey's motion to dismiss under Rule 12(b)(6) will be granted.

### IV. ORDER

Based on the foregoing, the Court **ORDERS** that the motion to dismiss filed by Warden Tracy Bailey (Docket Entry No. 10) is **GRANTED,** and Plaintiffs' claims against Defendant Bailey are **DISMISSED** on the merits; it is further

**ORDERED** that all claims of Plaintiff Prison Justice League are **DISMISSED** without prejudice for lack of jurisdiction; it is further

**ORDERED** that Defendant Bailey's Motion for Protective Order (Docket Entry No. 29) is **DENIED** as moot.

The Clerk of Court will provide a copy of this Order to all the parties of record.

SIGNED at Houston, Texas, on September *30*, 2015.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE